## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BARBARA MULLENAX,**

**Plaintiff,**

v.                                                              **Civil Action No. 1:04CV206**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF**
**SOCIAL SECURITY,**

**Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g), to obtain judicial review of a

final decision of the Commissioner of Social Security ("Commissioner") denying her claim for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C.

§§ 401-433, 1381-1383f. The matter is awaiting decision on cross motions for summary judgment

and has been referred to the undersigned United States Magistrate Judge for submission of a Report

and Recommendation. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I. Procedural History

Barbara Mullenax ("Plaintiff") filed an application for DIB on December 20, 2002, alleging

disability as of August 15, 2002, due to depression, anxiety, diabetes, high blood pressure, thyroid

disease, fibromyalgia, a bulging disc, breast cancer followed by mastectomy, and TIA mini-strokes

(R. 62, 87). The administration denied Plaintiff's claim at the initial and reconsideration levels (R.

40, 41). Plaintiff requested further review, and Administrative Law Judge Karl Alexander ("ALJ")

held an administrative hearing on January 21, 2004 (R. 303). Plaintiff, who was represented by a

non-attorney benefits representative, appeared and testified, as did Vocational Expert John Panza

("VE").

On March 10, 2004, the ALJ entered a decision finding Plaintiff had not been under a disability, as defined in the Social Security Act, at any time through the date of his decision (R. 27). Plaintiff submitted additional evidence to the Appeals Council, which denied Plaintiff's Request for Review, making the ALJ's decision the final decision of the Commissioner in this matter (R. 4-6).

## II. Statement of Facts

Plaintiff was born January 24, 1945, and was nearly 59 years old at the time of the administrative hearing (R. 307). She graduated from high school, and later took a six-month course in typing and shorthand (R. 309). She worked from 1984 to 1999 as a secretary, clerk, and account associate with a bank, and from August 1999 until August 2002 as a data entry clerk (R. 88). Plaintiff last worked in August 2002 (R. 87).

Plaintiff was evaluated for cardiac symptoms in February 1998, and again in July 2001. An EEG, carotid duplex study, electrocardiogram, and cardiac spect study were all normal (R. 209, 211, 230-231).

Plaintiff was referred to counseling and began taking mediation for depression and anxiety in April 1998 and September 2000 (R. 185-197).

Plaintiff was treated with medication for high blood pressure as early as March 1999 (R. 195).

Plaintiff was diagnosed with diabetes in July 2001 (R. 183).

In November 2001, Plaintiff reported pain "all over" to her treating physician, Mohamad Arja, M.D. (R. 178). Dr. Arja noted Plaintiff was 5'4" tall and weighed 200 pounds. He also noted she had pain on palpation of major tender points, and diagnosed Fibromyalgia. He prescribed Elavil

2

and Ultram.

In December 2001, Plaintiff sought treatment at the emergency room for back pain (R. 131). Upon examination, she had tenderness and muscle spasms in her back (R. 132). She was diagnosed with lumbar strain/sprain and was prescribed Flexeril, warm compresses, and rest, and was advised to follow up with a physical therapy evaluation (R. 130).

Plaintiff sought chiropractic treatment from January through March 2002 (R. 138-139). She had no further treatment until August 2002, when she again sought chiropractic treatment (R. 137). She also stopped working at about that time. She then had no medical treatment until January 2003.

On January 30, 2003, Plaintiff underwent a psychological evaluation with Peggy Allman, M.A., at the request of the State agency (R. 143). Plaintiff stated she was able to cook, clean with help, sew, and go fishing and camping. Ms. Allman found Plaintiff had mildly deficient immediate memory, intact recent memory, and normal persistence and pace (R. 145-146). Her concentration, however, was markedly deficient, as was her remote memory. She had normal social functioning (R. 146).

On February 26, 2003, Plaintiff underwent a consultative physical examination with Pravin I. Patel, M.D., at the request of the State agency (R. 163-165). Dr. Patel noted Plaintiff had a known case of obesity, diabetes, hypertension, depression, anxiety, disc disease, post thyroidectomy, hypothyroidism, and chronic low back pain. Plaintiff also reported a history of mini-stroke and breast cancer with mastectomy (R. 163).

Upon physical examination, Plaintiff could ambulate independently without any assistive device. Her gait was normal. She could walk on her toes and heels, but was unable to squat and arise. Her height was 5'4", and her weight was 194 pounds. Her blood pressure was 140/98. Range

of Motion was within normal limits. X-Rays of the lumbar spine showed no significant bony abnormality (R. 168). Dr. Patel diagnosed Obesity, Diabetes, Hypertension, Hyperlipidemia, Anxiety/Depression, Chronic low back pain/disk disease, History of mini-stroke, Fibromyalgia, and History of carcinoma of the breast with right sided radical mastectomy in 1990 with chemotherapy.

On March 6, 2003, Plaintiff's physician, Dr. Arja, noted Plaintiff had normal gait and fine and gross motor ability (R. 173).

State agency physician Hugh M. Brown, M.D. reviewed the medical records and opined Plaintiff had no physical limitations due to her impairments (R. 234-241). He noted her diagnosis of obesity.

Plaintiff continued to report hip and back pain, but hip and pelvis x-rays were normal (R. 175-202). An x-ray of the lumbosacral spine showed questionable loss of disc height at L3-4 and L4-5 (R. 203). Dr. Arja concluded that fibromyalgia was the most likely diagnosis (R. 276). He prescribed Elavil.

Plaintiff was feeling better with the Elavil in June 2003 (R. 274). Dr. Arja noted Plaintiff again had normal gait, and fine and gross motor ability. In August 2003, Plaintiff was taking Vioxx for her pain, which was "helping well." She returned to the chiropractor in December 2003 (R. 277).

State agency reviewing physician Cynthia Osborne, M.D., reviewed the evidence of record and found Plaintiff had no limitations due to her physical impairments (R. 262-269).

State agency psychologist Joseph Kuzniar, Ed.D., opined that Plaintiff suffered from an affective disorder and anxiety, and found she had mild restriction of activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation (R. 253).

Dr. Kuzniar also completed a Mental RFC assessment, opining Plaintiff would be moderately limited in her ability to maintain attention and concentration for extended periods; compete a normal workday and workweek without interruptions from psychologically based symptoms and to perform ast a consistent pace without an unreasonable number and length of rest periods, and respond appropriately to changes in the work setting (R. 258-259). She was otherwise not limited or not significantly limited.

Dr. Kuzniar opined that Plaintiff retained the capacity to understand and remember complex routine tasks, but her anxiety would reduce her ability to perform complex tasks in a timely manner (R. 260). He believed she could carry out a moderate level of routine directions within a low stress work setting.

Plaintiff's weight varied from 193 pounds to 212 pounds during the relevant time frame (R. 165, 175-178, 272, and 274-276).

Plaintiff testified at the hearing that she was 5'4" tall, and weighed 202 pounds (R. 307).

The ALJ issued his Decision on March 10, 2004, finding Plaintiff not disabled. He particularly noted Plaintiff's treating physician's diagnosis of fibromyalgia, but found:

> [T]here is no medically acceptable diagnosis of fibromyalgia in regard to identifying 12 out of 18 tender points. There is not, in the Administrative Law Judge's opinion, an appropriate or definitive diagnosis of fibromyalgia. The evidence of record fails to support the alleged ruptured and bulging disc. X-ray of the lumbar spine on February 27, 2003, showed no significant bony abnormality and an x-ray on April 3, 2003, was interpreted as revealing "question" of slight loss of disc height at L3-4 and L4-5.

(R. 20).

## New Evidence Submitted to the Appeals Council

After the ALJ issued his decision, Plaintiff submitted additional evidence to the Appeals

Council, including the following: (R. 285-302).

An MRI performed in November 1994, indicating an extra dural defect of the C5-6 vertebrae, with a minor central disc protrusion at C3-4 and C4-5 (R. 290). Evidence also showed a bulging disc of the lumbar spine at L4-5 without significant impingement (R. 297). These back impairments were related to a motor vehicle accident that occurred in October 1994, after which Plaintiff was treated with exercise.

The new evidence also showed Plaintiff was hospitalized for two days in February 1998 due to transient ischemic attacks as well as accelerated hypertension (R. 291). An MRI of the brain showed no aneurysm, stroke, or mass lesions. An EKG, EEG, and carotid doppler study were all normal. Plaintiff was released with instructions to follow a low-fat diet and take medication for blood pressure (R. 291-292).

The new evidence also summarized Plaintiff's history of counseling for depression from May 1998 through August 1998, during which she was prescribed Effexor (R. 287).

In June 2004, only three months after the ALJ issued his decision, Plaintiff was evaluated by Peter Embi, M.D., a rheumatologist at the Cleveland Clinic (R. 299-302). Physical examination showed Plaintiff had 14 out of 18 positive tender points, indicating fibromyalgia (R. 300). Dr. Embi diagnosed fibromyalgia, and also noted that Plaintiff had symptoms of obstructive sleep apnea. He recommended gradual increase in exercise, plus a mild analgesic, such as Tylenol.

### III. Administrative Law Judge Decision

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations, ALJ Alexander made the following findings:

1.    The claimant meets the non-disability requirements for a period of disability and disability Insurance Benefits set forth in Section 216(i) of the social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's chronic lumbar strain; depression/anxiety are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the following residual functional capacity: she is able to perform medium work; should work in a low stress environment with no production line-type of pace or independent decision making responsibilities; is limited to unskilled work involving routine and repetitive instructions ans tasks; and should have no more than occasional interaction with other people.

7.  The claimant is unable to perform any of her past relevant work (20 CFR § 404.1568).

8.  The claimant is an "individual of advanced age" (20 CFR § 404.1563).

9.  The claimant has a "high school education" (20 CFR § 404.1564).

10. The claimant has no transferable skills from any past relevant work (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of medium work (20 CFR § 404.1567).

12. Although the claimant's exertional limitations do not allow her to perform the full range of medium work, using Medical-Vocational Rule 203.15 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as food preparation worker/kitchen worker and laundry worker.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(R.26-27).

## IV. Contentions

The plaintiff contends:

1.     The failure of the Appeals Council to consider new evidence confirming the plaintiff's claims that she had pain because of fibromyalgia and bulging discs in her spine was reversible error;

2.     The ALJ failed to consider Plaintiff's obesity and failed to apply SSR 02-1p and SSR 96-7p;

3.     The ALJ used his own medical judgment to conclude that Plaintiff did not have marked difficulties in concentration; and

4.     It was error for the ALJ to rely on a hypothetical question which did not adequately and fairly describe the plaintiff's limitations.

The defendant contends:

1.     The ALJ properly considered Plaintiff's obesity and her subjective complaints of disability;

2.     The ALJ's finding that Plaintiff could perform unskilled, routine, repetitive work with no independent decision-making and no more than occasional interaction with others in a low-stress environment adequately accommodated the concentration difficulties documented in the administrative record;

3.     The ALJ's hypothetical question included all of the limitations supported by the evidence of record; and

4.     This Court is limited to reviewing the final decision of the Commissioner, the ALJ's decision, and is not reviewing the Appeals Council's Decision.

2.     The ALJ's credibility finding is supported by substantial evidence.

For reasons of clarity and efficiency, the undersigned will discuss Plaintiff first contention last in this Report and Recommendation.

## V. Discussion

### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to

8

determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984) *(quoting Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Commissioner's decision, the reviewing court must also consider whether the ALJ applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## B. Obesity

Plaintiff argues the ALJ failed to consider Plaintiff's obesity and failed to apply Social Security Regulation ("SSR") 02-1p. Defendant contends the ALJ properly considered Plaintiff's obesity. SSR 02-1p provides, in pertinent part:

> **We will consider obesity in determining whether:**
>
> The individual has a medically determinable impairment . . . .
>
> The individual's impairment(s) is severe . . . .
>
> The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings . . . .
>
> The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national

9

economy . . . .[1]

## How Is Obesity Identified as a Medically Determinable Impairment?

When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner. However, if there is evidence that indicates that the diagnosis is questionable and the evidence is inadequate to determine whether or not the individual is disabled, we will contact the source for clarification, using the guidelines in 20 CFR 404.1512(e) and 416.912(e) . . . .

## When Is Obesity a "Severe" Impairment?

As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities . . . . We will also consider the effects of any symptoms (such as pain or fatigue) that could limit functioning . . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities . . . .

There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

## How Do We Evaluate Obesity at Step 3 of Sequential Evaluation, the Listings?

Obesity may be a factor in both "meets" and "equals" determinations.

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase

---

[1]These questions correspond to the five-step sequential evaluation process prescribed in the Commissioner's regulations. *See* 20 CFR § 404.1520.

the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders . . . .

We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment. For example, obesity affects the cardiovascular and respiratory systems because of the increased workload the additional body mass places on these systems. Obesity makes it harder for the chest and lungs to expand. This means that the respiratory system must work harder to provide needed oxygen. This in turn makes the heart work harder to pump blood to carry oxygen to the body. Because the body is working harder at rest, its ability to perform additional work is less than would otherwise be expected. Thus, we may find that the combination of a pulmonary or cardiovascular impairment and obesity has signs, symptoms, and laboratory findings that are of equal medical significance to one of the respiratory or cardiovascular listings.

However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

**How Do We Evaluate Obesity in Assessing Residual Functional Capacity in Adults . . . . ?**

Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning.

An assessment should also be made of the effect obesity has upon the

individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time. As explained in SSR 96-8p ("Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims"), our RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. A "regular and continuing basis" means 8 hours a day, for 5 days a week, or an equivalent work schedule. In cases involving obesity, fatigue may affect the individual's physical and mental ability to sustain work activity. This may be particularly true in cases involving sleep apnea.

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone . . . .

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations . . . .

Here there is no doubt Plaintiff carried an actual diagnosis of obesity. Her treating physician recorded Plaintiff's height and weight at each office visit, and those records indicate she was 5'4" inches tall and weighed between 193 and 212 pounds during the relevant time period (R. 175-178, 272, 274-276). A review does not indicate her treating physician actually diagnosed obesity. The State agency examining consulting physician, however, did diagnose obesity. In fact, it is the first diagnosis in his examination report (R. 165). In addition, the first sentence of his report states: "This 58-year-old lady has known case of obesity . . . ." (R. 163). State agency reviewing physician Hugh M. Brown quoted the diagnosis of obesity in his RFC assessment (R. 235) (although he also found Plaintiff had no significant physical disability). Under the Regulation, the ALJ was therefore required to either find Plaintiff's obesity was a medically determinable impairment, or to contact the examiner for clarification. The ALJ here did neither.

At the second step, the ALJ was required to "do an individualized assessment of the impact

12

of obesity on [Plaintiff's] functioning when deciding whether the impairment is severe." SSR 00-2p. Here the ALJ never even mentioned obesity as an impairment, and therefore he did not assess the impact on Plaintiff's functioning. Neither did the ALJ discuss obesity at the third, fourth or fifth steps, as he was required to do. A review of the Decision indicates the ALJ never considered or even mentioned Plaintiff's obesity at all.

Defendant argues that the State agency physicians did not find any physical limitations despite Plaintiff's obesity, and that: "An ALJ is required to follow, but is not require to cite, relevant Social Security Rulings in making his decision." Neither of these arguments have merit. The Regulation clearly states that the ALJ *will consider* obesity at each step of the sequential evaluation. Here he did not.

The undersigned therefore finds substantial evidence does not support the ALJ's determination that Plaintiff was not disabled at any time through the date of his decision.

## C. Credibility

Plaintiff next argues that the ALJ failed to apply SSR 96-7p. Defendant contends the ALJ properly considered Plaintiff's subjective complaints of disability. In *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984)(*citing Tyler v. Weinberger*, 409 F.Supp. 776 (E.D.Va.1976)), the Fourth Circuit found that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."

Again, because the ALJ failed to consider Plaintiff's obesity in conjunction with her other impairments, his credibility determination must fail. He mainly found Plaintiff not credible based on the objective evidence. He found she: "definitely seem[ed] to be exaggerating her symptoms," and

her testimony regarding her high level of pain "seem[ed] highly incredible and in fact all but impossible in view of her extremely minimal back condition . . . ." In addition, he found the examining physician's finding that Plaintiff could not squat and arise not credible, because "There is no objective medical reason why the claimant should not be able to squat and arise." Regarding Plaintiff's testimony that she was unable to sleep and therefore napped during the day, the ALJ stated: There is no medical reason why the claimant should be able to sleep in the daytime but not at night . . . and the Administrative Law Judge does not find her allegations concerning daytime napping to be at all credible."

As SSR 00-2p notes, however:

Obesity can cause limitation of function. . . . . An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balancing, stooping, and crouching.

Also:

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone . . . .

Finally:

The effects of obesity may not be obvious. For example, some people with obesity also have sleep apnea. This can lead to drowsiness and lack of mental clarity during the day.

Plaintiff's obesity may therefore have increased her pain level and limitations, caused her to be unable to squat and arise, and even caused her alleged nighttime insomnia and daytime sleepiness. Because the ALJ did not consider her obesity at all, the undersigned therefore finds substantial evidence does not support his finding that Plaintiff was not credible.

14

## D. Concentration

Plaintiff next argues the ALJ used his own medical judgment to conclude that Plaintiff did not have marked difficulties in concentration. Defendant contends The ALJ's finding that Plaintiff could perform unskilled, routine, repetitive work with no independent decision-making and no more than occasional interaction with others in a low-stress environment adequately accommodated the concentration difficulties documented in the administrative record. The state agency examining psychologist found Plaintiff's concentration was "markedly deficient," as measured by serial seven's (R. 145). One State agency reviewing psychologist, however, found Plaintiff had only "mild" difficulties in maintaining concentration, persistence, or pace, while a second found she had "moderate" limitations in that area (R. 158, 253). 20 CFR § 404.1527(f)(2)(i) provides:

> State agency medical or psychological consultants, or other program physicians or psychologists, are highly qualified physicians and psychologists who are also experts in Social Security disability evaluations. Therefore, administrative law judges must consider findings of State agency medical or psychological consultants, or other program physicians or psychologists. as opinion evidence, except for the ultimate determination about whether you are disabled.

The ALJ credited the second State agency reviewing psychologist in finding Plaintiff had "moderate" difficulties in maintaining concentration, persistence, or pace. In *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990), the Fourth Circuit stated that the ALJ bears the ultimate responsibility for weighing the evidence and resolving any conflicts, and that, in reviewing for substantial evidence, the reviewing court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. The undersigned therefore finds substantial evidence supports the ALJ's determination that Plaintiff had "moderate" difficulties in concentration.

The ALJ found Plaintiff limited to performing unskilled work involving routine and repetitive

instructions and tasks, with low stress and no production line type of pace or independent decision making responsibilities. The undersigned was unable to locate a Fourth Circuit case squarely addressing the issue. In *Brachtel v. Apfel*, however, the Eighth Circuit held that a hypothetical including the ability "to do only simple routine repetitive work, which does not require close attention to detail [and] no[] work at more than a regular pace," was sufficient for a claimant who "often" exhibited limitations of concentration, persistence or pace. 132 F.3d 417 (8th Cir. 1997).

In addition, Dr. Kuzniar specifically opined Plaintiff retained the capacity to understand and remember complex routine tasks. He noted, however, that her anxiety related to task performance reduced her capacity to complete complex stressful tasks in a timely manner. He then specifically opined she retained the capacity to carry out a moderate level of routine directions within a low stress work setting (R. 260).

The undersigned therefore finds substantial evidence supports the ALJ's determination that Plaintiff's moderate limitations of concentration would not affect her ability to perform unskilled work involving routine and repetitive instructions and tasks, with low stress and no production line type of pace or independent decision making responsibilities.

### E. Hypothetical to the VE

Plaintiff argues it was error for the ALJ to rely on a hypothetical question which did not adequately and fairly describe her limitations. Defendant contends the ALJ's hypothetical question included all of the limitations supported by the evidence of record. Plaintiff again refers to her limitations of concentration. When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." *English v. Shalala,*

10 F.3d 1080, 1085 (4th Cir.1993) (*citing Walker v. Bowen*, 876 F.2d 1097, 1100 (4th Cir.1989)). The undersigned has already found that the ALJ's RFC took into account Plaintiff's moderate limitations of concentration in forming his RFC. The undersigned therefore finds the hypothetical to the VE also properly took that limitation into account.

Because the undersigned has already found, however, that the ALJ did not properly consider Plaintiff's obesity during his sequential analysis, it follows that his hypothetical to the VE may not have included all Plaintiff's limitations that were supported by the record.

The undersigned therefore finds substantial evidence does not support the ALJ's hypothetical to the VE.

### F. Appeals Council Decision

Plaintiff also argues the failure of the Appeals Council to consider new evidence confirming the plaintiff's claims that she had pain because of fibromyalgia and bulging discs in her spine was reversible error. Defendant contends this Court is limited to reviewing the final decision of the Commissioner, the ALJ's decision, and is not reviewing the Appeals Council's Decision.

In *Wilkins v. Secretary*, 953 F.2d 93 (4th Cir. 1991), the Fourth Circuit determined that the Appeals Council *will consider* evidence submitted to it if the evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. *Wilkins* further defined the terms "new" and "material" as follows:

> Evidence is new . . . if it is not duplicative or cumulative . . . . Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Id.* at 96.

The undersigned finds the report by Dr. Embi, a rheumatologist with the Cleveland Clinic,

is "new" and relates to the period at issue. The undersigned also finds "there is a reasonable possibility that the new evidence could have changed" the ALJ's determination. The ALJ expressly noted Plaintiff did not have the requisite 12 out of 18 tender points for a diagnosis of fibromyalgia. Yet only three months later, Dr. Embi found Plaintiff had 14 out of 18 tender points and diagnosed fibromyalgia. The fact that the Appeals Council claims to have considered the report and included it in the transcript further supports a finding that the evidence was new and material.

> In *Wilkins, supra*, the Fourth Circuit held:

> Because the Appeals Council denied review, the decision of the ALJ became the final decision of the Secretary. "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." The Appeals Council specifically incorporated [the new evidence] into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

*Wilkins v. Secretary*, 953 F.2d at 96 (internal citations omitted). Therefore, where the Appeals Council considered the new evidence and included it in the record, but denied review, the Fourth Circuit holds that the reviewing court should consider the record as a whole, including the new evidence, in order to determine whether the ALJ's decision is supported by substantial evidence.

In this case, the ALJ specifically found Plaintiff did not have fibromyalgia, and based his credibility findings in part on the fact that she did not have fibromyalgia. He based this finding on the lack of a "medically acceptable diagnosis of fibromyalgia in regard to identifying 12 out of 18 tender points."

The new evidence is from an examining physician, a specialist in the field, and indicates Plaintiff had 14 out of 18 tender points. The diagnosis was fibromyalgia. This supports Plaintiff's treating physician's diagnosis of "most likely fibromyalgia," which was based on "major tender

points." There is no persuasive evidence from another examining or treating physician or psychologist that is contrary to that evidence. The undersigned therefore concludes that the ALJ's finding that Plaintiff did not have fibromyalgia is not supported by substantial evidence.

By this conclusion, the undersigned does not find that Plaintiff's fibromyalgia or obesity cause the requisite functional limitations or that she is disabled. As the Fourth Circuit held in *Wilkins*, however, the undersigned recommends the Commissioner's decision here be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## VI. RECOMMENDATION

For the reasons herein stated, I find substantial evidence does not support the Commissioner's decision denying the Plaintiff's application for SSI. I accordingly recommend Defendant's Motion for Summary Judgment be **DENIED**, and Plaintiff's Motion for Summary Judgment be **GRANTED in part,** by reversing the Commissioner's decision under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3), with a remand of the cause to the Commissioner for further proceedings consistent and in accord with this Recommendation.

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable W. Craig Broadwater, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984),

*cert. denied*, 467 U.S. 1208 (1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *Thomas v. Arn*, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record.

Respectfully submitted this **22** day of July, 2005.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE